IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**MARLON ARLANDO EWING**                                    **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:15-CV-153-SAA**

**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**                                 **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Marlon Arlando Ewing has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying his Title II application for a period of disability (POD) and disability insurance benefits (DIB), as well as his Title XVI application for supplemental security income (SSI) under the Social Security Act. Docket 1. Plaintiff protectively filed applications for benefits on January 17, 2012 alleging disability beginning on October 18, 2011. Docket 8, p. 275. The agency administratively denied the plaintiff's claim initially and upon reconsideration. Docket 8, pp. 149, 154. Plaintiff then requested an administrative hearing, which an administrative law judge (ALJ) held on February 20, 2014. Docket 8, pp. 85-111. The ALJ issued an unfavorable decision on March 28, 2014. Docket 8, pp. 117-135. On August 14, 2014 the Appeals Council vacated the hearing decision and remanded plaintiff's case, instructing the ALJ to (1) obtain updated and additional evidence concerning plaintiff's impairments according to 20 C.F.R. 404.1512-1513; (2) further evaluate plaintiff's mental impairments in accordance with 20 C.F.R. 404.1520(a); (3) evaluate the effects of obesity in accordance with Social Security Ruling 02-1p; (4) give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide

1

rationale with specific references to evidence of record in support of assessed limitations in according with Social Security Ruling 96-8p; and (5) if warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base in accordance with Social Security Rulings 83-12, 83-14 and 85-15. Docket 8, pp. 136-139.

After remand, the ALJ held another hearing on December 4, 2014 [Docket 8, pp. 54-84], and issued a second unfavorable decision on January 23, 2015 [Docket 8, pp. 27-53]. The Appeals Council denied plaintiff's request for a review and reconsideration on June 8, 2015 and July 16, 2015, respectively. Docket 8, pp. 17-21, 8-11. Plaintiff filed this appeal from the decision, and it is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born February 18, 1976 and was 38 years old at the time of the first ALJ hearing. Docket 8, p. 90. He is considered a younger individual for the purpose of determining disability benefits. He has a high school education and was previously employed as (1) stock clerk – heavy exertional level – semi-skilled; (2) sawmill worker – medium exertional level – semi-skilled; (3) warehouse supervisor – light exertional level – skilled. Docket 8, pp. 108-109. Plaintiff contends that he became disabled before his application for disability as a result of insomnia, hypertension, depression, bulging disc in his back, herniated disc in his back, congenital spinal stenosis, migraines and anal fissurectomy. Docket 8, p. 331. After remand, the

ALJ determined that plaintiff suffered from "severe" impairments of "obesity, affective disorder, and spinal stenosis" [Docket 8, p. 32], but that his impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). *Id.* at 37.

Based upon testimony by the vocational expert [VE] at the hearing, and after considering the record as a whole, the ALJ determined that plaintiff retained the Residual Function Capacity [RFC] to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds. He can occasionally stoop, crouch and kneel. The claimant can never crawl. He is limited to work that involves routine repetitive tasks. The claimant must be employed in a low-stress environment, defined as only occasional decision making required. He can engage only occasionally with the general public and coworkers.

Docket 8, p. 39. At the hearing, the VE testified that plaintiff would not be able to perform his past relevant work. Docket 8, p. 79. At steps four and five the ALJ rejected plaintiff's claims of disability, concluding that even though the plaintiff has severe impairments and cannot perform his past relevant work, there nevertheless are jobs which exist in significant numbers in the national economy which plaintiff can perform. Docket 8, p. 45. Consequently, he found plaintiff was not disabled.

Plaintiff argues the ALJ erred in several ways when deciding that plaintiff was not disabled under the Social Security Act. Plaintiff argues the ALJ erred (i) in his assessment of the consultative examiner Dr. Michael Whalen; (ii) in his assessment of the consultative examiner Dr. Mary Blair; (iii) in his evaluation of social worker Mr. Pippen's opinion under SSR 06-3P; (iv) in his evaluation of plaintiff's former wife, Natasha Ewing, under SSR 06-03P; (v) by violating the provisions of *Stone v. Heckler* as well as SSR 96-8P in improperly evaluating non-

severe impairments; and (vi) failing to consider the service related disability found by the Veteran's Administration.

## II. **EVALUATION PROCESS**

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; 416.920. The burden to prove disability rests upon plaintiff through the first four steps of the process, and if plaintiff is successful in sustaining his burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). First, the plaintiff must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 416.920(b). Second, the plaintiff must prove his impairment(s) are "severe" in that they "significantly limit [] his physical or mental ability to do basic work activities . . . " 20 C.F.R. § 404.1520(c); 416.920(c). At step three the ALJ must conclude that the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d); 416.920(d). If the plaintiff does not meet this burden, at step four he must prove he is incapable of meeting the physical and mental demands of his past relevant work. 20 C.F.R. § 404.1520(e); 416.920(e). Finally, at step five, the burden shifts to the Commissioner to prove that, considering plaintiff's residual functional capacity, age, education and past work experience, he is capable of performing other work. 20 C.F.R. § 404.1520(g); 416.920(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is then given the chance to prove that he cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

## III. STANDARD OF REVIEW

The court's scope of review is limited. On appeal the court must consider whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. DISCUSSION

A.  **Did the ALJ Err in Assessing the Opinions of Consultative Examiners Dr. Michael Whelan and Dr. Mary Blair?**

As Dr. Michael Whelan and Dr. Mary Blair both performed consultative examinations, the court addresses together plaintiff's first and second points of error.

i.  **Dr. Whelan's Opinion**

Plaintiff asserts the ALJ improperly assessed Dr. Michael Whelan's opinions [Docket 14, pp. 7-11], both in giving his opinions little weight and in failing to take into account that plaintiff was taking numerous medications. The Commissioner counters that an ALJ is free to assign little or no weight to the opinion of any physician for good cause, and the ALJ properly discounted the opinions of Dr. Whelan. Docket 15, p. 6.

Dr. Whelan, a psychologist, first performed a consultative examination on May 17, 2012. Docket 8-1, p. 157. He concluded that plaintiff had some deficiencies in memory functioning and some concentration problems. *Id*. at p. 158. Dr. Whelan indicated that he believed the claimant had a mood disorder, not otherwise specified (NOS), secondary to his medical condition. *Id*. Dr. Whelan noted that he did not think the claimant suffered from post-traumatic stress disorder. *Id*. Dr. Whelan concluded that the claimant is able to follow simple directions but will have difficulty sustaining his attention and concentration through a full work day because of his medical problems. *Id*.

Following the Appeals Council remand, Dr. Whelan conducted a second consultative examination. Docket 8-1, p. 636. Dr. Whelan administered the Wechsler Adult Intelligence Scale – Form IV and the claimant earned a full scale IQ of 53, verbal comprehension of 68, perceptual reasoning of 54, working memory of 50 and processing speed of 68. *Id*. at 637-638.

Dr. Whelan indicated the claimant's scores were the product of deliberate exaggeration. *Id*. at 638. Dr. Whelan concluded the clamant was able to perform simple routine repetitive tasks based on his actual intellectual abilities, but the claimant's attention and concentration could be affected by chronic pain. *Id*. According to Dr. Whelan, a depressive disorder and anxiety disorder (both NOS), were likely. *Id*. Dr. Whelan found the claimant's ability to use judgment, interact with supervisors and deal with work stresses was poor, and his ability to make other occupational adjustments, other performance adjustments and other personal/social adjustments was fair to good. *Id*. at 633-635.

> The ALJ assigned little weight to Dr. Whelan's opinions, stating:
>
> In Exhibit 9F, Dr. Whelan concluded the claimant would have difficulty sustaining attention and concentration through a full workday due to his medical problems. Dr. Whelan was not afforded the opportunity to review the claimant's entire medical history. Conclusions as to the claimant's medical problems, including physical problems, are outside the scope of Dr. Whelan's expertise. In Exhibit 28F, Dr. Whelan indicated the claimant's IQs were the product of deliberate exaggeration by the claimant. When asked the sum of 4+4, the claimant answered 7. When asked to take 4 from 9, the claimant answered 6. The claimant is a high school graduate who completed some college courses. Dr. Whelan assessed the claimant with mental restrictions without taking into account the claimant's deliberate exaggerations.

Docket 8, p. 43.

The court concludes that the ALJ did not err in assigning Dr. Whelan's opinion little weight. Rather, he simply operated within his role and in compliance with his duties as fact-finder. As fact-finder the ALJ has the sole responsibility for weighing the evidence. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The court may not reweigh the evidence or substitute its opinion for that of the Commissioner. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). An "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995), quoting *Bradley v.*

*Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

In this instance, the ALJ did not err by electing not to grant Dr. Whelan's opinion significant weight. Because Dr. Whelan was only a consultative examiner and not a treating physician, the ALJ was under no duty to either grant the opinion significant weight or perform a detailed analysis of the opinion under 20 C.F.R. § 404.1527(d)(2), as he would have been had Dr. Whelan been a treating physician. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Even though Dr. Whelan's opinion was not entitled to the deference typically reserved for treating physicians, the ALJ provided a detailed analysis of the entire medical record, which included Dr. Whelan's opinion, and thoroughly discussed his decisions in weighing the evidence. Docket 8, p. 43.

Furthermore, in a separate part of his decision, the ALJ found that plaintiff's allegations of physical limitations were not supported by any objective evidence. Docket 8, p. 40. The ALJ noted that back x-rays showing no abnormalities and MRIs showing only very mild abnormalities did not support plaintiff's alleged limitations due to back problems. Docket 8, p. 40; Docket 8-1, pp. 148, 166, 277, 620. The lack of objective medical evidence supporting plaintiff's alleged physical limitations, plaintiff's exaggeration of limitations during Dr. Whelan's examinations, and Dr. Whelan's lack of expertise in physical ailments gave the ALJ good cause to discount Dr. Whelan's opinions.

Finally, the ALJ properly discounted plaintiff's allegations regarding the limiting effects from his multiple medications due to plaintiff's lack of credibility. The ALJ specifically stated, "as discussed, [plaintiff's] allegations appear to be exaggerated, therefore, the alleged medication side effects are not afforded significant consideration." Docket 8, p. 41. Thus, plaintiff's

8

argument that the ALJ failed to consider the side effects of the medications is contrary to the record.

### ii. Dr. Blair's Opinion

Plaintiff next argues the that the ALJ erroneously gave Dr. Blair's opinion little weight and also "played doctor" when he discounted Dr. Blair's opinion. Docket 15, p. 11-15. The Commissioner counters that the ALJ properly applied the regulations for determining the weight to give a physician's opinion. Docket 15, p. 10.

Dr. Blair performed a consultative examination of plaintiff on September 13, 2014. Docket 8-1, p. 622. On examination, the claimant's weight was 218 pounds and his body mass index was 35. *Id*. at 624. The claimant's blood pressure was 150/75. *Id*. at 625. He ambulated without difficultly and without an assistive device. *Id*. The claimant was able to get on and off the examination table without difficulty. *Id*. Range of motion of the lumbar spine was reduced. *Id*. at 626. He exhibited no evidence of scoliosis and no spasms of the paraspinous muscle. *Id*. at 625. Straight leg raise testing showed no abnormality. *Id*. The claimant had no difficulty bending over and touching his toes. *Id*. His grip strength was good bilaterally with good fine and gross manipulative skills. *Id*. at 626. Motor strength was 5/5 in all extremities. *Id*. No evidence of muscular atrophy was noted. *Id*. Reflexes were absent at the left patella and left Achilles. *Id*. Dr. Blair's impression included hypertension, insomnia, lumbar strain, migraine headaches and sleep apnea. *Id*. at 627. Dr. Blair found the claimant able to lift/carry less than 10 pounds occasionally and 10 pounds frequently.[1] Dr. Blair opined that plaintiff could stand for

---

[1] Dr. Blair's medical source statement and the ALJ's summary of it do not appear to be consistent. The ALJ said that Dr. Blair assigned restrictions of occasional 20 pounds lift/carry and less than 10 pounds frequently. Docket 8, pg. 34. However, because the court finds that the ALJ did not err in discounting Dr. Blair's opinion, the inconsistency is at most harmless.

9

60 minutes in an 8-hour workday and for 30 minutes without interruption. Docket 8-1, pg. 628. Dr. Blair found that the plaintiff can sit for 2 hours in an 8-hour workday and for 30 minutes without interruption. *Id*. at 629. Dr. Blair found that the claimant can never climb, balance, stoop, crouch, kneel and crawl, but could occasionally perform pushing/pulling. *Id*. at 630.

The ALJ assigned little weight to Dr. Blair's opinion, stating:

> The limitations assessed by Dr. Blair are inconsistent with the objective evidence noted in her report. On examination, the claimant exhibited no problems getting up and out of a chair and on and off the examination table. The claimant's gait was normal. The claimant's motor strength was normal in all extremities. No problems with balance were noted or alleged on examination. The claimant was able to walk on his heels and toes. He could squat to the floor and recover. Dr. Blair concluded the claimant was only able to sit for 2 hours in an 8-hour workday. She found the claimant unable to climb, balance, stoop, crouch, kneel or crawl. Dr. Blair noted that her assessed limitations as to postural activities were based on the claimant's report. As previously noted, the claimant's credibility has been called into question.

Docket 8, p. 44.

Just as with Dr. Whelan's opinion, the court finds that the ALJ did not err in assigning Dr. Blair's opinion limited weight. Rather, he simply operated within his role and in compliance with his duties as fact-finder. Because Dr. Blair was only a consultative examiner and not a treating physician, the ALJ was under no duty to either grant the opinion significant weight or perform a detailed analysis of the opinion under 20 C.F.R. § 404.1527(d)(2), as he would have been had Dr. Blair been a treating physician. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Despite the fact that Dr. Blair's opinion was not entitled to the deference typically reserved for treating physicians, the ALJ provided a detailed analysis of the record, which included Dr. Blair's opinion, and discussed his decisions in weighing the evidence. Docket 8, p.

10

44. Instead of "playing doctor" as the plaintiff alleges, the ALJ discounted Dr. Blair's opinion because it was not supported by objective medical evidence and properly applied the regulations for determining the weight to give a physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3). Finally, the ALJ also discounted Dr. Blair's opinion because of plaintiff's lack of credibility. Docket 8, p. 44. For these reasons, the ALJ's decision to discount Dr. Blair's opinion was done with good cause and based on substantial evidence.

**B.     Did the ALJ Err in Assessing the Opinions of Mr. John W. Pippen, a Social Worker, and Natasha Ewing, Plaintiff's Former Wife?**

Neither John W. Pippen nor Natasha Ewing is considered an "acceptable medical sources." Hence, the court combines plaintiff's third and fourth points of error made in his brief.

**i.     Mr. Pippen's Opinion**

Plaintiff asserts that the ALJ erred in his evaluation of Mr. John W. Pippen's opinion under SSR 06-3P. Docket 14, p. 15. Mr. Pippen's opinion is not entitled to the same deference as the opinions provided by physicians because he is a social worker, which is not an "acceptable medical source" under the social security regulations. 20 C.F.R. § 404.1513(a), (d)(1); *see also Lacroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006). Only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR Ruling 06-03p, 71 Fed.Reg. 45593-03, 2006 WL 2329939 (Aug. 9, 2006); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (discussing SSR 06-03p and related regulations); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (same); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (same); *Lacroix*, 465 F.3d at 885-86 (although therapists' opinions were not entitled to treating source weight, they were entitled to consideration).

Regarding opinions from "other sources," SSR 06-3p states:

> Since there is a requirements to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicators reasoning, when such opinions may have an effect on the outcome of the case.

In his decision, the ALJ first reviewed Mr. Pippen's independent living assessment performed on December 13, 2013. In this assessment, Pippen noted that the claimant alleged that he stayed home most of the time due to the severity of his neuropathy and other service connected disabilities. Docket 8, p. 34. Pippen concluded the claimant is infeasible for employment and in need of independent living services. According to Pippen, the claimant requires assistance from others during his activities of daily living, especially when experiencing symptoms of neuropathy, which includes pain and numbness in his arms, back and legs. Pippen recommended the claimant receive an ADA toilet, grab bar in bathroom, long handled back brush, non-slip mat in the bathtub, lift chair, giddy-up stick, sit/stand stool for kitchen, swivel seat and handy bar for vehicle, bed cane, hemorrhoids cushion and large pill organizer with alarm. Docket 8, p. 34.

After reviewing Pippen's assessment, the ALJ decided to give the assessment less weight than qualifying medical source opinions under 20 C.F.R. 404.1513(a)(e) because his opinion was not from an "acceptable medical source." The ALJ also gave less weight to Pippen's assessment because he appeared to rely on the claimant's subjective complaints, which the ALJ found to be

12

exaggerated at times.  Docket 8, p. 44.

The ALJ's decision to afford Mr. Pippen's assessment little weight is supported by sufficient evidence in the record.  If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole.  *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).  Furthermore, it is not error for an ALJ to disregard statements based on inconsistency of the testimony with evidence in the record.  *Gozales v. Astrue*, 231 Fed. App'x 322, 325 (5th Cir. 2007).

### ii. Natasha Ewing

The opinion provided by Natasha Ewing, plaintiff's former wife, is likewise not entitled to the same deference as the opinion provided by plaintiff's physicians.  The social security regulations provide that evidence from "other sources," including non-medical sources such as "spouses, parents. . ., siblings, other relatives, friends, neighbors, clergy, and employers," may be useful to show the severity of an individual's impairment and how it affects his ability to function.  20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  In considering opinions from such "other sources," the ALJ may consider factors such as (1) the nature and extent of the relationship between the source and the individual; (2) the source's qualifications; (3) the source's area of specialty or expertise; (4) the degree to which the source presents relevant evidence to support his or her opinion; (5) whether the opinion is consistent with other evidence; and (6) any other factors that tend to support or refute the opinion.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ should generally explain the weight given to opinions from other sources.  *See Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir.

13

2000) (ALJ's failure to recognize existence of evidence from family members, therapists, and counselors contributed to determination that administrative decision was not supported by substantial evidence).

Here, the ALJ specifically referred to the Function Report – Adult – Third Party forms completed by the claimant's wife at the time, Natasha Ewing. Docket 8, p. 44. The ALJ then explained why he assigned less weight to Ms. Ewing's report:

> The statements made by Ms. Ewing have not been given under oath and appear to be no more than a parroting of the subjective complaints already testified to and reported by the claimant. Ms. Ewing is not a medical professional and as a lay witness, they are not competent to make a diagnosis or argue the severity of the claimant's symptoms in relation to his ability to work. The opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein. The undersigned finds the allegations of Ms. Ewing are not credible to the extent that her statements are inconsistent with the determination herein. (Exhibit 65).

Docket 8, p. 44.

Despite plaintiff's protestations to the contrary, the court finds that the ALJ's stated reason for giving her opinion limited weight provides substantial evidence to support doing so.

## C.     Did the ALJ Violate the Provisions of *Stone v. Heckler* and SSR 96-8p?

Plaintiff next asserts that the ALJ violated the provisions of *Stone v. Heckler* and SSR 96-8p. He argues that the ALJ violated *Stone v. Heckler* because he found plaintiff's headaches, hypertension, diabetes and anal fissure to be non-severe impairments and violated SSR 96-8p when he found that the claimant had no mental restrictions. Docket 14, p. 25.

Step two in the sequential analysis requires an ALJ to determine whether a claimant has a medically determinable impairment, or a combination of impairments, that can be described as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fifth Circuit uses a particular standard to

determine whether a claimant's impairment is severe:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment is not severe only if it is slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Loza v. Apfel*, 219 F.3d 378, 390-91 (5th Cir. 2000) (reaffirming this standard following federal regulatory revisions).

The ALJ complied with *Stone*. He found that the plaintiff suffered from severe impairments of obesity, affective disorder, and spinal stenosis. Docket 8, p. 32. He specifically referred to *Stone* in finding plaintiff's headaches, hypertension, diabetes and anal fissure were non-severe impairments. Docket 8, p. 35. This reference to the *Stone* opinion, and his thorough discussion of why he found impairments to be either severe or non-severe, satisfy *Stone*.

SSR 96-8p provides that a residual functional capacity analysis "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, *1 (S.S.A. 1996). A "regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. at *2. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id*. at *3. "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work . . . ." *Id*. RFC involves both exertional and nonexertional factors. Exertional capacity is based on seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*. at *5. "Each function must be considered separately." *Id*. In assessing RFC, the adjudicator must

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *Id*. at *7. The RFC assessment must include a resolution of any inconsistencies in the evidence. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). Although SSR 96-8 requires consideration of the four work-related mental activities, it does not require the ALJ to formalistically recite and discuss all the possible work-related mental activities in his discussion. *See e.g. Walton v. Astrue*, 2011 WL 195975, at *9-10 (N.D. Tex. 2011).

In this case, the ALJ recognized that plaintiff had the severe impairment of affective disorder and included mental limitations in plaintiff's RFC. Docket 8, p. 39. Specifically, the ALJ found that plaintiff is limited to work that involves routine repetitive tasks, must be employed in a low-stress environment with only occasional required decision making, and can engage only occasionally with the general public and coworkers. Docket 8, pp. 39-44. Further, even assuming the ALJ did not satisfy the function-by-function assessment requirement in SSR 96-8p, the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected." *Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[R]emand for failure to comply with a ruling is appropriate only when a complainant affirmatively demonstrates ensuant prejudice." *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) (emphasis omitted). Errors are considered prejudicial when they "cast doubt onto the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Because, as set forth above, substantial evidence supports the ALJ's RFC determination, which included mental limitations, any error the ALJ committed in failing to follow all the requirements of SSR 96-8p is harmless.

**D. Did the ALJ Fail to Consider the Service Related Disability Found By the Veteran's Administration?**

Finally, the plaintiff contends the ALJ erred by not weighing plaintiff's service-related disability rating from the Veteran's Administration ("VA"). Docket 14, pp. 26-27. The Commissioner responds that an ALJ was not required to weigh plaintiff's VA disability rating because the disability rating was not total and permanent. Docket 15, pp. 14-15.

A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. *Chambliss v. Massanari*, 269 F.3d 520; see also *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981). Although the Fifth Circuit has sometimes referred to a VA disability determination as being entitled to 'great weight,' the amount of weight to be given to such an opinion will vary depending upon the factual circumstances of each case. Because the regulations for disability status differ between the SSA and the VA, ALJs need not give 'great weight' to a VA disability determination if they adequately explained the valid reasons for not doing so. *Chambliss*, 269 F.3d at 522. In other words, the VA's finding of disability is, at a minimum, entitled to *some* weight. *Id*.

Here, other than initially noting the VA's disability determination, the ALJ does not make any subsequent references to the disability determination. Even though the ALJ subsequently discussed the VA Medical Center records in his decision, the ALJ's opinion did not address any specific reasons for not giving the VA's disability determination "great weight." In fact, the ALJ did not assign any weight at all to the VA records.

Reversal and remand would be in order based on this issue if the VA had found plaintiff

to be totally disabled, and the ALJ had summarily dismissed the finding as non-binding and not provided additional explanation for discounting the weight of the VA decision. But the VA did not find plaintiff totally disabled. The Commissioner urges that the same amount of explanation is not required of the ALJ when there is a finding of less than total disability, and plaintiff has not cited any precedent that would require the same amount of weight be afforded in a case such as this one. At least one case supports the Commissioner's argument. *See Peel v. Astrue*, 2009 WL 3028300, *7 (N.D.Fla 2009) ("the ALJ likely did not err by failing to consider the individual percentages, considering that plaintiff was never characterized [by the VA] as totally disabled").

The court need not resolve this issue. Any error stemming from the ALJ's lack of further discussion of the VA rating is harmless in this case because a partial disability finding by the VA necessarily implies that the claimant can continue to perform certain jobs. For that reason, a VA finding of a partial disability rating might as easily cut against, rather than in favor of, an SSA determination that the individual could not perform remunerative work of any kind. *Chaudhry v. Astrue*, 688 F.3d 661, 669 (9th Cir. 2012).

## V.  CONCLUSION

After diligent review, the court concludes that the ALJ's decision was supported by substantial evidence and applied the proper legal standards. The Commissioner's decision is affirmed, and the case is closed. A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 29th day of April, 2016.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE